**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **STEVEN NEMECEK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )   **No. 2:03 CV 346** |
| **MARJAN KARAMACOSKI and** | ) |
| **PGT TRUCKING, INC.,** | ) |
| | ) |
| **Defendants.** | ) |

## OPINION and ORDER

This matter is before the court on: (1) a motion for partial summary judgment filed by defendants Marjan Karamacoski and PGT Trucking, Inc. on November 1, 2004; (2) a motion for summary judgment filed by plaintiff Steven Nemecek on November 8, 2004; and, (3) two motions to strike filed by defendants on December 14, 2004 and January 17, 2005, respectively. As all matters have been fully briefed, the court shall now address the merits of each of the motions listed above.

## I. BACKGROUND[1]

This action arises out of a collision between Norfolk Southern Train 21-Z, conducted by plaintiff Steven Nemecek ("plaintiff"), and a semi-tractor trailer driven by defendant Marjan Karamacoski ("Karamacoski"). On August 23, 2001, Karamacoski, a truck driver who was on lease to and operating under PGT Trucking's ("PGT") authority, (PGT's Answers to Plaintiff's Discovery [hereinafter PGT's Answers], at No.

---

[1] The facts recited in this section appear to be undisputed.

5), was charged with driving a semi-tractor trailer loaded with a single steel coil from U.S. steel in Gary, Indiana to National Processing in East Chicago, Illinois, (Karamacoski Aff. ¶ 4). Karamacoski's route took him south on Clark Road in Gary toward a railway crossing. (Karamacoski Aff. ¶ 4). Upon reaching the Clark Road railway crossing, Karamacoski stopped his truck to the north of the first set of tracks. (Karamacoski's Answers to Plaintiff's Discovery [hereinafter Karamacoski's Answers], at No. 4). The crossing gates and warning signals at the Clark Road crossing were activated due to the fact that Norfolk Southern Train 44-G sat stopped on the tracks blocking the Clark Road intersection. (Karamacoski Aff. ¶¶ 4, 6; *see also* Deposition of Robert Sturgeon [hereinafter Sturgeon Dep.][2], at 29-30).

Norfolk Southern Train 44-G continued to block the Clark Road intersection for approximately 45 minutes before it was eventually broken into two pieces and moved to the east and west of Clark Road. (Karamacoski's Answers, at No. 4; Karamacoski Aff. ¶ 4). Although Norfolk Southern Train 44-G no longer directly blocked the Clark Road crossing, the two parts of Norfolk Southern Train 44-G ultimately remained near to the grade crossing and thus obstructed Karamacoski's full view of the tracks. (Karamacoski Aff. ¶¶ 4, 7). The crossing gates remained down and the warning signals continued to flash at this time. (Karamacoski Aff. ¶ 6). Nonetheless, despite the warning signals, Karamacoski proceeded to drive his vehicle over the tracks. (Karamacoski's Answers, at

---

[2] Robert Sturgeon was acting as the engineer of Norfolk Southern Train 21-Z on August 23, 2001, the date of the collision between Train 21-Z and Karamacoski's truck. (Sturgeon Dep., at 6-7).

No. 4; Karamacoski Aff. ¶ 5). Karamacoski passed over the first set of tracks (the tracks closest to his vehicle) without incident. However, upon reaching the second set of tracks, Karamacoski's trailer was struck by Norfolk Southern Train 21-Z which was traveling westbound along the tracks. (Karamacoski Aff. ¶ 5). The collision sent the single steel coil loaded into Karamacoski's truck into the cab of the train where plaintiff, as conductor of Norfolk Southern Train 21-Z, was apparently situated. (Deposition of Steven Nemecek [hereinafter Nemecek Dep.], at 24-25).

As a result of the August 23, 2001 collision, plaintiff filed a complaint with a District Court in the Northern District of Ohio on May 6, 2003. In his complaint plaintiff asserts a claim of negligence against Karamacoski and PGT[3], and requests punitive damages based upon that claim. (Pl.'s Compl. ¶¶ 12-18).[4] On June 18, 2003, defendants filed a motion for Transfer of Venue to the Northern District of Indiana, and that motion was granted on July 17, 2003. This court ultimately received a copy of the transfer order

---

[3] At the time of the accident, Karamacoski was acting within the course and scope of his employment. (PGT's Answers, at No. 5). Therefore, plaintiff argues that PGT is vicariously liable for any negligent act allegedly performed by Karamacoski. (Pl.'s Compl. ¶ 13).

[4] Plaintiff's complaint also states a claim under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.*, against Norfolk Southern Railway a/k/a Norfolk Southern Corporation. (Pl.'s Compl. ¶¶ 3-11). However, on September 20, 2004, plaintiff and Norfolk Southern Railway filed a stipulation requesting the dismissal of Norfolk Southern Railway from this action. (*See* docket # 65). Accordingly, Norfolk Southern Railway was dismissed as a defendant to this action on October 7, 2004. (Order dated Oct. 7, 2004, at docket # 66). Defendants Karamacoski and PGT later named Norfolk Southern Railway as a non-party defendant pursuant to IC 34-51-2, *et seq*. (Docket # 64).

3

along with the original case file on August 11, 2003.

On November 1, 2004, Karamacoski and PGT filed a motion for partial summary judgment requesting that this court find, as a matter of law, that punitive damages are unwarranted in the instant action. Plaintiff filed his response to defendants' motion for partial summary judgment on December 9, 2004, nine days after the court-set deadline for such responses. Accordingly, defendants now seek to have plaintiff's response struck from the record. In between the filing of defendants' motion for partial summary judgment and his own untimely response, plaintiff filed a motion for summary judgment against defendants on the issue of negligence. Defendants timely responded to plaintiff's motion on January 17, 2005, and along with their response filed a motion to strike from the record an exhibit to plaintiff's motion for summary judgment. The court shall now address the merits of each of the pending motions, although it shall not necessarily do so in the order in which they were received by the court.

## II. STANDARD OF REVIEW

Summary judgment is a flexible procedural device which allows district courts to dispose of all or any portion of an action for which a trial is superfluous. *See* FED.R.CIV.P. 56, at Advisory Comm. Notes, 1937 Adoption ("Summary judgment procedure is a method for promptly disposing of actions in which there is no genuine issue as to any material fact."). RULE 56 of the FEDERAL RULES OF CIVIL PROCEDURE governs the summary judgment process and requires that summary judgment be rendered "forthwith if the pleadings, depositions, answers to interrogatories, and

4

admissions on file, together with the affidavits, if any, show that there is *no genuine issue* as to any *material fact* and that the moving party is entitled to a *judgment as a matter of law*." FED.R.CIV.P. 56(c) (emphasis added); *accord Gordon v. United Airlines*, 246 F.3d 878, 885 (7th Cir. 2001) ("A grant of summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."). More simply put, FED.R.CIV.P. 56 mandates an approach in which summary judgment is proper only if there is no reasonably contestable issue of fact that is potentially outcome-determinative. *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997).

When considering a motion for summary judgment, the court views all inferences in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). However, the nonmoving party may not rely upon mere allegations, but must present specific facts to show that a genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

## III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

As an initial matter, this court must deal with a motion filed by defendants requesting that it strike an exhibit to plaintiff's motion for summary judgment. Indeed, the court must determine what evidence can be considered in evaluating a motion for

summary judgment before it may actually reach the merits of such a motion.

A. *Defendants' Motion to Strike*

Defendants seek to have this court strike from the record a medical report written by Dr. Frederick J. Shiple III, M.D. ("Dr. Shiple"), which is attached as an exhibit to plaintiff's motion for summary judgment. (*See generally* docket # 85)[5]. Dr. Shiple is a medical expert hired by defendants' counsel to consult in this litigation. (Docket # 85, at 1). Dr. Shiple ultimately conducted a medical examination upon plaintiff at defendants' request on September 30, 2004. (Docket # 85, at 1). That exam resulted in the report that now sits at the center of this controversy. The report was apparently provided to plaintiff by defendants' counsel as part of discovery, (docket # 93, at 2), and plaintiff now seeks to use that report to demonstrate that certain injuries reported by him are the result of the collision between Karamacoski's truck and plaintiff's train, (docket # 71, at 7-8). Defendants argue generally that Dr. Shiple's report must be struck from the record and not considered as part of this summary judgment inquiry because the report has not been properly identified or authenticated by affidavit, was not written under oath and constitutes inadmissible hearsay. (*See generally* docket # 85).

First, the court shall consider the authenticity issue. For purposes of summary judgment "facts must be established through one of the vehicles designed to ensure reliability and veracity--depositions, answers to interrogatories, admissions and

_____

[5] In attempt to avoid confusion that might result should this court cite to the long and somewhat convoluted titles of the motions, responses and replies now before this court, the court shall instead cite to docket numbers.

affidavits." *Martz v. Union Labor Life Ins. Co.,* 757 F.2d 135, 138 (7th Cir. 1985). When a party, like plaintiff, seeks to offer evidence through exhibits other than depositions, answers to interrogatories, etc., those exhibits must be authenticated or identified by an affidavit or otherwise made admissible in evidence before they may be considered on summary judgment. *Id.* Pursuant to FED.R.EVID. 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Courts have found that production of documents by a defendant from its own files is sufficient to justify a finding of authentication. *United States v. Brown,* 688 F.2d 1112, 1116 (7th Cir. 1982). Therefore, as plaintiff obtained Dr. Shiple's report from defendants during discovery, that report has been implicitly authenticated. Consequently, defendants' argument that Dr. Shiple's report has not been properly authenticated is without merit.

However, the fact that Dr. Shiple's report has been authenticated does not automatically mean that the information contained within that report may now be reviewed for purposes of determining whether summary judgment is appropriate. "[O]nly evidence or statements that would be *admissible* at a trial and having probative force, may be considered" on summary judgment. *First Nat'l Bank Co. v. Ins. Co. of North America,* 606 F.2d 760, 766 (7th Cir. 1979) (citation omitted) (emphasis added). Authentication, in-and-of-itself, does not assure admissibility, rather, authentication is merely a condition precedent to admissibility. *See* FED.R.EVID. 901(a). Indeed, even

7

though a document might be authenticated, other bars to admissibility, such as hearsay, may nonetheless remain, *see* FED.R.EVID. 901, at Advisory Comm. Note to Subdivision (b) ("It should be observed that compliance with requirements of authentication or identification by no means assures admission of an item into evidence, as other bars, hearsay for example, may remain.").

As noted above, defendants argue that Dr. Shiple's report constitutes hearsay[6], and is thus not admissible in this summary judgment proceeding. (Docket # 85, at 2-5). It is certainly true that, "hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (citations omitted). Plaintiff suggests that defendants' argument that Dr. Shiple's report is hearsay is "somewhat outrageous," but does not explain why this is so. (Docket # 93, at 3). In any event, the court sees nothing outrageous about defendants' claim considering that the report was written by a third-party for purposes of evaluating plaintiff's physical condition for litigation, (*see* docket # 85, at 2-5), and is now being used by plaintiff in his summary judgment motion for purposes of proving the truth of the matter asserted, that is, to prove that plaintiff's injuries "are directly and causally related to the [train accident of August 23, 2001]," (*see* docket # 71, at 7-8). Accordingly, Dr. Shiple's report presents obvious hearsay issues. Surely, there exist many exceptions to the hearsay rule, but plaintiff makes no effort to argue that any of

---

[6] Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted therein. FED.R.EVID. 801(c).

those exceptions apply here. Therefore, as Dr. Shiple's report constitutes hearsay, it is

inadmissible in this summary judgment proceeding. *See Eisenstadt*, 113 F.3d at 742.[7]

Consequently, defendants' motion to strike Dr. Shiple's report is granted, and this court

---

[7] The court notes that plaintiff insists that Dr. Shiple's report *must* be admissible because the report is attached to his attorney's affidavit. (Docket # 93, at 1-3). However, in his affidavit, plaintiff's attorney, Mr. Leizerman, attests only to the fact that he is lead counsel in this case and that he received Dr. Shiple's report for use in this case. (*See* generally Leizerman Aff.). Mr. Leizerman does not attest to the veracity and accuracy of Dr. Shiple's report, and indeed he could not do so as the medical findings made and opinions formed by Dr. Shiple (based upon an examination conducted by Dr. Shiple) are beyond Mr. Leizerman's personal knowledge. *See* FED.R.CIV.P. 56(e) (On summary judgment, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). Ultimately, the mere existence of Mr. Leizerman's affidavit does not render the contents of Dr. Shiple's report admissible.

Plaintiff also argues that Dr. Shiple's report *must* be admissible because had the report been favorable to defendants, defendants would have used it. (Docket # 93, at 1-2). In other words, plaintiff argues "if they can, I can." However, such an argument is misplaced. Dr. Shiple's report, *in the form in which it is now presented*, is just as inadmissible in defendants' hands as it is in plaintiff's hands. Dr. Shiple's report, as it has been presented to this court, is not one of the types of documents authorized by FED.R.CIV.P 56(c) to be used in support or in opposition of a motion for summary judgment. *See* FED.R.CIV.P. 56(c) ("The judgment sought shall be rendered forthwith if the *pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits*, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (emphasis added)). Evidentiary materials other than those enumerated in FED.R.CIV.P. 56(c), like Dr. Shiple's unsworn report, may be submitted in support of a motion for summary judgment *only* if they are identified by affidavit or otherwise made admissible in evidence. *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 570 n.4 (7th Cir. 1989); *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985). In the instant action, Dr. Shiple's report is not attached to an affidavit given by one who has personal knowledge of the report's contents, and it has not been otherwise made admissible. Therefore, simply put, the report, as now presented, fails to meet the admissibility requirements of FED.R.CIV.P. 56, and is thus inadmissible no matter who might seek to have it reviewed on summary judgment.

shall not consider the report in rendering its decision on plaintiff's motion for summary judgment.[8]

B. *Summary Judgment*

Plaintiff requests that this court grant summary judgment on his negligence claim against defendants Karamacoski and PGT[9]. Plaintiff contends that summary judgment is appropriate here because Karamacoski's failure to heed the activated crossing gates and flashing warning signals at the Clark Road railway crossing in Gary, Indiana constitutes negligence *per se.* (Docket # 71, at 5-8). The court shall now address the merit of plaintiff's argument.

Under Indiana law,[10] "the unexcused or unjustified violation of a duty proscribed by a statute or ordinance constitutes negligence per se." *Town of Montezuma v. Downs,* 685 N.E.2d 108, 112 (Ind. Ct. App. 1997) (citation omitted). Plaintiff alleges that Karamacoski's decision to drive over the tracks at the Clark Road crossing, in spite of activated railway warning signals, constitutes negligence *per se* because such actions violate the duties set forth in IC § 9-21-8-39. (Docket # 71, at 5-8). Indiana Code § 9-21-8-39 provides, in pertinent part:

---

[8] Even if Dr. Shiple's report was admissible as evidence, and this court considered the report in rendering its decision on summary judgment, the court's decision would nonetheless remain the same for those reasons appearing in Section III.B of this order.

[9] *See supra* note 3.

[10] All parties appear to agree that Indiana law applies to this negligence action.

10

Whenever a person who drives a vehicle approaches a railroad grade crossing, the person shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest track of the railroad and may not proceed until the person can do so safely under the following circumstances:

> (1) When a clearly visible electric or mechanical signal device gives warning of the immediate approach of a train.
>
> (2) When a crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a train.

Of course, before this court may ultimately determine whether Karamacoski's actions do in fact constitute a violation of IC § 9-21-8-39, and thus amount to negligence *per se*,[11] it must first determine whether IC § 9-21-8-39 is actually applicable to the instant action. In deciding whether a statute is applicable to a given situation, this court

---

[11] It is imperative to note here that negligence *per se* "is not predicated upon any test for ordinary or reasonable care, but rather is founded in the defendant's violation of a specific requirement of law." *Smith v. Cook*, 361 N.E.2d 197, 200-01 (Ind. Ct. App. 1977) (citations omitted). Ultimately,

> [w]here a specific requirement is made by statute and an absolute duty thereby imposed, no inquiry is to be made whether the defendant acted as a reasonably prudent man, or was in the exercise of ordinary care. In such a situation, the obligation and requirement has been fixed and established by law, and the conduct of any person which is violative of such specific statutory requirement is illegal . . . .

*Id.* In the instant action, IC § 9-21-8-39 is imperative in its language and specific in its requirements; it provides that vehicles *shall* stop at railroad crossings and *may not* proceed under the very particular circumstances described until it is safe to do so, *see* IC § 9-21-8-39. In other words, the standard of duty under IC § 9-21-8-39 is "fixed and absolute," and thus, no matter what the circumstances of a given case, the failure to observe the statute's requirements is negligence *per se*. *See Smith*, 361 N.E.2d at 200-01 ("Where the standard of duty is thus fixed and absolute, it becomes the same under all circumstances, the failure to observe that requirement is clearly negligence per se.").

must consider "the purpose of the [statute], the persons whom it was intended to protect and the injuries which it was intended to prevent." *Town of Montezuma,* 685 N.E.2d at 112 (internal quotation marks and citation omitted); *accord Am. United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 704 (Ind. Ct. App. 2004) ("In order for the violation of a statute or ordinance to be negligence *per se,* the trier of fact must first determine whether the statute is applicable."). It appears to this court that IC § 9-21-8-39 was generally designed to better ensure the safety of railroad crossings. *See Johnson v. Consol. Rail Corp.*, 797 F.2d 1440, 1445 (7th Cir. 1986) (labeling IC § 9-4-1-106, the precursor to IC § 9-21-8-39, a "safety statute"). More specifically, it seems the purpose of the statute is to help protect against the risk of collisions between vehicles and trains, and therefore prevent injuries that would undoubtedly result should vehicle and train meet. *See, e.g., Pennsylvania R.R. Co. v. Huss*, 180 N.E. 919, 921 (Ind. Ct. App. 1932) ("The primary purpose of signals, gates, other devices, and of watchmen when required to be maintained at points where railroad tracks intersect highways, streets, etc., is to warn persons traveling on and over such ways that a train is approaching and to protect them from damage or injury likely to ensue, if they attempt to use such crossing before the train passes thereover."). The court cannot see why plaintiff would not be included in the class of persons protected by IC § 9-21-8-39 because, as a conductor of a train, plaintiff's safety is undoubtedly in jeopardy should, for example, a vehicle ignore warning signals at a crossing and cross the tracks in front of his oncoming train. Accordingly, IC § 9-21-8-39 is applicable to the case now before the court.

12

Next, this court must determine whether a violation of the statute occurred. *Am. United Life Ins. Co.*, 808 N.E.2d at 704. Karamacoski freely admits that he proceeded across the tracks at Clark Road while a clearly visible signal device gave warning and while the crossing gate was lowered. (Karamacoski Aff. ¶ 6). Therefore, it is clear that Karamacoski breached his statutory duty under IC § 9-21-8-39. However, although Karamacoski's actions may amount to negligence *per se*, it does not necessarily follow that he and PGT, are liable *per se* to plaintiff. *McBride ex rel. Estate of McBride v. Cole Associates, Inc.*, 753 N.E.2d 730, 739 (Ind. Ct. App. 2001) ("[N]egligence *per se* does not mean liability *per se* . . . ."). Ultimately, "[i]n addition to determining whether a defendant violated a duty dictated by statute, the court must also consider whether the breach was the *proximate cause* of any injury," *Town of Montezuma,* 685 N.E.2d at 112 (emphasis added); this is so because "[t]he violation of a statute raises no liability for injury to another unless the injury was in some manner the result of such violation," *id.* (internal quotation marks and citation omitted); *see also McBride*, 753 N.E.2d at 739 ("[N]egligence *per se* does not mean liability *per se,* that is, a violation of a statutory duty is not actionable negligence unless it was also the proximate cause of the injury.").

"A party's act is the proximate cause of an injury if it is the natural and probable consequence of the act and should have been *reasonably foreseen* and anticipated *in light of the circumstances.*" *Munsell v. Hambright,* 776 N.E.2d 1272, 1279 (Ind. Ct. App. 2002) (citation omitted) (emphasis added). Proximate cause is generally a question of fact, however it can become a question of law if "only a single conclusion can be drawn from

13

the facts." *Id*. (citation omitted). If there exists any reasonable doubt as to proximate cause, it is a question of fact to be determined by the jury. *New York Cent. R.R. Co. v. Cavinder*, 211 N.E.2d 502, 508 (Ind. Ct. App. 1965).

It appears to this court that there is *not* only one conclusion that can be drawn from the facts of this case with regard to the proximate cause of the accident on August 23, 2001. To begin with, there exists conflicting testimony as to whether plaintiff's train signaled audibly by horn, bell, whistle or otherwise as it approached the crossing, thereby giving vehicles at the crossing the proper and necessary warning. *See* IC § 8-6-4-1 ("[T]he engineer or other person in charge of or operating an engine upon the line of a railroad shall, when the engine approaches the crossing of a turnpike, public highway, or street in this state, beginning not less than one-fourth (1/4) mile from the crossings: (1) sound the whistle on the engine distinctly not less than four (4) times, which sounding shall be prolonged or repeated until the crossing is reached; and (2) ring the bell attached to the engine continuously from the time of sounding the whistle until the engine has fully passed the crossing."). Indeed, Karamacoski states that he never heard a train horn or whistle despite the fact that his driver's side window was rolled down, (Karamacoski Aff. ¶ 6), while Norfolk Southern's engineer, Robert Sturgeon, testified that he sounded Norfolk Southern Train 21-Z's horn in the appropriate fashion as it approached the Clark Road crossing, (Sturgeon Dep., at 16). There is also evidence in this case that Karamacoski's view of the tracks was obstructed by Norfolk Southern Train 44-G which had been left by Norfolk Southern Railway, a non-party defendant to

14

this action, to sit very close to the crossing at Clark Road. (Karamacoski Aff. ¶ 7).

Ultimately, the court thinks that the conflicting testimony concerning Norfolk Southern Train 21-Z's horn/whistle, combined with the fact that Norfolk Southern Train 44-G was left to sit stopped close to the crossing and therefore obstructed Karamacoski's view, create issues for the jury to decide with regard to proximate cause. *Cf. Johnson v. Baltimore & Ohio R.R. Co.*, 528 F.2d 1313, 1315 (7th Cir. 1976) (in case involving accident between train and vehicle at railroad crossing conflicting testimony on whether railroad sounded train whistle, the hazard of the crossing, and railroad's failure to clear right of way of trees, shrubbery, etc., created issues for the jury to decide on questions of railroad's negligence and on plaintiff driver's alleged contributory negligence); *Longhini v. Gulf, Mobile & Ohio R.R. Co.*, 348 F.2d 228, 230 (7th Cir. 1965) ("Where the evidence discloses that a railroad crossing is obscured to any considerable extent, both the issues of negligence and contributory negligence are questions of fact for the jury."); *Smith v. Chesapeake & Ohio R.R. Co.*, 311 N.E.2d 462, 469-70 (Ind. Ct. App. 1974) (case involving collision between train and truck where train allegedly failed to sound warning of the train's approach to the crossing and where truck driver was negligent in failing to stop when warning flashers were operating at crossing created a question for jury concerning proximate cause; jury must decide whether truck driver's failure to stop was an intervening independent force which severed chain of causation from the original alleged wrongful act of failing to sound warning of train's approach to

the crossing).[12] Indeed, the circumstances at the Clark Road crossing appear to have been such that reasonable minds could differ as to whether Karamacoski's actions were the sole proximate cause of the August 23, 2001 accident, or whether something else (such as, for example, Norfolk Southern Train 44-G's position near the crossing) contributed to or was in its own right the cause of the collision. *See Cavinder*, 211 N.E.2d at 508 (The issue of proximate cause is for the jury to decide "where its determination depends on a state of facts from which different minds might reasonably draw different inferences or conclusions . . . ."). Therefore, although the court finds that Karamacoski's act of ignoring the warning signals and crossing gate at the Clark Road railway crossing constitutes negligence *per se*, it nonetheless denies plaintiff's motion for summary judgment because the undisputed facts in this case do not demonstrate, as a matter of law, that Karamacoski's actions were the sole, (or even a), proximate cause of the collision between Karamacoski's truck and plaintiff's train. *See Munsell*, 776 N.E.2d at 1279 ("[A] violation of a statutory duty is not actionable negligence unless it was also the proximate cause of the injury.).

--------

[12] This court realizes that those cases it has just cited were decided under the contributory negligence standard and that, in the instant action, the comparative fault standard applies. However, under either standard, "[a]llocation of each party's proportionate fault is a question for the trier of fact . . . except where there is no dispute in the evidence and the fact finder could come to only one conclusion." *Walters v. Dean*, 497 N.E.2d 247, 254 (Ind. Ct. App. 1986). In this case, there is clearly a dispute over the allocation of fault.

# IV. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Before this court goes on to reach the merits of defendants' motion, it must, as it did in Section III.B of this order when dealing with plaintiff's motion for summary judgment, first address the merits of a motion to strike in which defendants request that this court strike plaintiff's response to their motion for partial summary judgment.

A. *Defendants' Motion to Strike*

Defendants request that this court strike plaintiff's response to their motion for partial summary judgment as untimely because it was filed on December 9, 2004, nine days after the December 1, 2004 deadline established by this court for filing such responses. (*See generally* docket # 79). Plaintiff opposes defendants' motion to strike and has thus filed a Motion in Opposition in which he belatedly requests leave to file his response nine days out of time. (*See generally* docket # 80). Pursuant to FED.R.CIV.P. 6(b), should a party fail to act and miss a court established deadline, just as plaintiff did by failing to timely file his response, the court, upon motion made after the expiration of the deadline, may nonetheless permit the act to be done if the failure to act was the result of "excusable neglect." Accordingly then, this court must determine whether plaintiff's neglect in meeting this court's filing deadline amounts to "excusable neglect."

"Excusable neglect," at least in the context of FED.R.CIV.P. 6(b), is a "somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship,*

507 U.S. 380, 392 (1993) (footnotes omitted). Rather, under FED.R.CIV.P. 6(b), excusable

neglect *may* include neglect due to simple, faultless omissions to act or carelessness. *Id.*

at 388; *accord Raymond v. Int'l Bus. Machines Corp.,* 148 F.3d 63, 66 (2nd Cir. 1998) ("In

other words, mere inadvertence, without more, *can* in some circumstances be enough to

constitute 'excusable neglect' justifying relief under Rule 6(b)(2).") (emphasis in

original)). The question of whether neglect (caused by faultless omission, carelessness or

something else) is "excusable" is ultimately "an equitable one," which requires "taking

account of all relevant circumstances surrounding the party's omission." *Pioneer,* 507

U.S. at 395 (footnote omitted). The relevant circumstances to be evaluated include:

(1) the reason for the delay and whether the delay was in plaintiff's control; (2) whether

plaintiff acted in good faith; (3) the danger of prejudice to defendants; and, (4) the

length of delay and its potential impact on the court's proceedings. *See id.*

In the instant action, plaintiff asserts that two staff members at his attorney's firm

caused his response to be untimely as "each thought the other had electronically filed

the [response] brief, when instead the brief was stored on Plaintiff counsel's computer

drive inaccessible to this Court." (Docket # 80, at 1). Although "staff" may have failed to

push the button sending plaintiff's response speeding through cyberspace, plaintiff's

attorney, Mr. Leizerman, had it well within his control to ensure that tasks delegated to

his staff were promptly attended to and appropriately completed. In other words, it is

Mr. Leizerman's own fault that *his* work for *his* client did not make it to this court on

time. However, while Mr. Leizerman may be at fault for the delay in filing plaintiff's

response, there is nothing in the record to suggest that he acted with anything other than good faith. Indeed, Mr. Leizerman contends that he finished plaintiff's response well in advance of the deadline, (docket # 80, at 1), and there is no evidence to indicate the contrary. Ultimately, it does not appear that Mr. Leizerman purposefully ignored the response deadline, nor does it appear that he idly left things to slumber until the last minute. As for the effect of plaintiff's delay on this court's proceedings, there does not seem to have been any; the nine days between the deadline and actual filing of plaintiff's response did not require other deadlines to be moved or changed, nor did it stall any decisions, rulings, or, as far as this court is aware, anything else. Finally, should this court deem plaintiff's neglect "excusable," there exists little danger of prejudice to defendants given this court's ultimate ruling in favor of defendants on their motion for partial summary judgment. Thus, balancing all of the relevant factors in the instant action, this court finds plaintiff's neglect in filing his response nine days after the established deadline to be "excusable."[13] Accordingly, defendants' motion to strike plaintiff's response from the record is hereby denied.[14]

---

[13] The court would like to emphasize here that it is *only* the *particular* circumstances of this *particular* case that make the nine day delay "excusable." Consequently, the court admonishes plaintiff's attorney to make a better practice of following up with his staff if he continues to delegate his work – the circumstances of the next case may not be so favorable.

[14] As an alternative to their motion to strike, defendants have requested that this court extend the time for defendants to file their reply to plaintiff's response. A reply is ultimately unnecessary at this point given the court's ruling in favor of defendants on the issue of punitive damages. Therefore, the court denies this request.

B. *Summary Judgment*

In their motion for partial summary judgment, defendants request that this court find, as a matter of law, that plaintiff is not entitled to punitive damages in the instant action. (*See generally* docket # 69). In Indiana, punitive damages are not awarded as a matter of course as such damages are designed to penalize or punish the wrongdoer and dissuade him and others from similar conduct in the future. *Orkin Exterminating Co. v. Traina*, 486 N.E.2d 1019, 1022 (Ind. 1986), *abrogation on other grounds recognized by*, *Budget Car Sales v. Stott*, 662 N.E.2d 638, 639 (Ind. 1996). Thus, under Indiana law, a plaintiff may *only* recover punitive damages if there exists clear and convincing evidence[15] that the defendant "acted with malice, fraud, gross negligence, or oppression which was not the result of mistake of law or fact, honest error of judgment, overzealousness, mere negligence, or other human failing." *Lazarus Dep't Store v. Sutherlin*, 544 N.E.2d 513, 527 (Ind. Ct. App. 1989) (citation omitted). There is no evidence in the instant action that Karamacoski acted with malice, fraud or oppression when driving his vehicle around the crossing gates and onto the tracks into the path of plaintiff's oncoming train. Thus, it would seem that the focus of this inquiry ought to be upon the issue of whether Karamacoski acted with "gross negligence." *See id.*

---

[15] "Clear and convincing evidence is defined as an intermediate standard of proof greater than a preponderance of the evidence and less than proof beyond a reasonable doubt." *Lazarus Dep't Store v. Sutherlin*, 544 N.E.2d 513, 527 (Ind. Ct. App. 1989). In order to prove a fact by clear an convincing evidence, one must demonstrate the existence of that fact to be highly probable. *Id.*

Yet, the court pauses to note, not insignificantly, that use of the phrase "gross negligence" here is really quite unfortunate in as far as Indiana's common law does not recognize degrees of negligence. *Wohlwend v. Edwards,* 796 N.E.2d 781, 785 n.2 (Ind. Ct. App. 2003); *accord Davidson v. Bailey*, 2005 WL 949967, at *6 (Ind. Ct. App. April 26, 2005) ("Under Indiana law there are no degrees of negligence."). Rather, "[t]he proper discussion to determine if punitive damages are appropriate is whether the complained of conduct was wanton and willful." *Davidson*, 2005 WL 949967, at *6; *accord Wohlwend*, 796 N.E.2d at 785 n.2 ("In the context of punitive damages the more appropriate term would seem to be 'willful and wanton misconduct.' "). A wanton and willful act is "an intentional act done with the reckless disregard of the natural and probable consequence of injury to a *known person under the circumstances known to the actor* at the time." *Witham v. Norfolk & Western Ry. Co.,* 561 N.E.2d 484, 486 (Ind. 1990) (emphasis added). Thus, for purposes of the instant summary judgment inquiry, this court must determine whether there exists clear and convincing evidence from which a jury could find that Karamacoski "consciously decided to engage in a course of conduct notwithstanding [his] awareness that it would very probably expose others to impending dangers." *Wanke v. Lynn's Transp. Co.*, 836 F. Supp. 587, 601 (N.D. Ind. 1993) (citing *Austin v. Disney Tire Co.,* 815 F. Supp. 285, 289 (S.D. Ind. 1993)).[16]

---

[16] As another court in this District aptly noted, such an inquiry "ultimately turns on the actor's state of mind: whether a defendant knew of, but consciously disregarded, the likely injurious consequences of his course of conduct." *Wanke v. Lynn's Transp. Co.*, 836 F. Supp. 587, 601 (N.D. Ind. 1993) (citations omitted). "Courts must be circumspect in approaching summary judgment motions that turn on a party's state of mind, but the

The undisputed evidence establishes that when Karamacoski first approached the railway crossing at Clark Road, Norfolk Southern Train 44-G sat stopped upon the tracks blocking the intersection. (Karamacoski Aff. ¶ 4). The stopped train caused the crossing gates to close and the warning lights to flash, and thus Karamacoski was prevented from moving across the tracks. (Karamacoski Aff. ¶¶ 4, 6; *see also* Sturgeon Dep., at 29-30). Norfolk Southern Train 44-G remained stopped and continued to block the intersection for approximately 45 minutes before it was eventually split into two halves, moved out of the way of the intersection and then left to sit fully stopped near to the intersection. (Karamacoski's Answers, at No. 4; Karamacoski Aff. ¶ 4). Because Norfolk Southern Train 44-G remained close to the railway crossing, it obstructed Karamacoski's view of the tracks. (Karamacoski Aff. ¶¶ 4, 6, 7). The train's continuing presence near to the crossing also led Karamacoski to believe that it remained the cause of the closed crossing gates and flashing warning signals. (Karamacoski Aff. ¶ 6). Accordingly, Karamacoski proceeded around the crossing gates and across the tracks. (Karamacoski Aff. ¶¶ 5-7).

Although it is clear that Karamacoski consciously and intentionally traversed the tracks at the Clark Road railway crossing despite the fact that the crossing gates were down and the warning lights flashing, the evidence just recited above does not suggest that Karamacoski committed his act "with [ ] reckless disregard of the natural and

---

party on whom the burden of proof would rest at trial still bears the burden of coming forth with evidence sufficient to establish the requisite mental state." *Id.* (citations omitted).

probable consequence of injury to a *known person under the circumstances known to* [him] at the time." *Witham,* 561 N.E.2d at 486 (emphasis added). Indeed, the undisputed evidence makes clear that Karamacoski could not see past Norfolk Southern Train 44-G to view the approach of Train 21-Z. (Karamacoski Aff. ¶¶ 4, 6, 7). Moreover, the evidence demonstrates that Karamacoski believed he could clear the crossing without causing injury to himself or another in as far as he had no indication that the signals at the crossing (which had been warning continuously since Train 44-G was originally stopped at the intersection) were caused by anything other than Train 44-G's proximity to the intersection. (Karamacoski Aff. ¶¶ 6, 8). In other words, given the circumstances known to Karamacoski at the time he made the choice to cross the tracks, this court cannot say that he had knowledge of an impending danger, and thus that he persisted in a course of conduct calculated to result in probable injury to himself or persons known to him. *See Witham,* 561 N.E.2d at 486. Therefore, Karamacoski's conduct does not appear to have been wonton or willful. *Cf. Miner v. Southwest Sch. Corp.,* 755 N.E.2d 1110, 1114 (Ind. Ct. App. 2001) (in case involving automobile crash defendant's conduct was not wonton or willful where the undisputed evidence demonstrated that defendant approached the intersection believing he could clear it without causing injury to himself or another automobile, and that defendant did not see any other vehicles as he approached the intersection).

Plaintiff presents absolutely no evidence that suggests anything to the contrary. Plaintiff's argument is not aimed at the facts presented, but rather focuses upon the idea

that the undisputed facts – which clearly show that Karamacoski consciously ignored railway warnings – demonstrate gross negligence. (*See generally* docket # 77). That may be so, but, as this court has already noted, in Indiana, the proper discussion to determine if punitive damages are appropriate is whether the complained of conduct was wanton and willful *not* grossly negligent. *Davidson*, 2005 WL 949967, at *6; *accord Wohlwend*, 796 N.E.2d at 785 n.2. Plaintiff also argues that the sort of conduct engaged in by Karamacoski is the sort of behavior punitive damages – which were designed to penalize or punish the wrongdoer and dissuade him and others from similar conduct in the future – were meant to address, (docket # 77, at 2). The court does not disagree that, in general, ignoring warning signs at railroad crossings is dangerous behavior and that everyone ought to be dissuaded from engaging in such behavior, but that does not mean punitive damages automatically apply to Karamacoski's conduct. Rather, as already noted, punitive damages are recoverable *only* upon clear and convincing evidence that the defendant acted with malice, fraud, oppression or wantonness and willfulness. *Wohlwend*, 796 N.E.2d at 784, 785 n.2. Based upon the undisputed facts presented here, it is clear that Karamacoski's conduct, although probably dangerous and of the sort one desires to deter, was neither malicious, fraudulent, oppressive, nor wanton and willful. Thus, the court hereby grants defendants' motion for partial summary judgment on the issue of punitive damages.

**V. CONCLUSION**

For the foregoing reasons, this court hereby:

(1) **GRANTS** defendants' motion to strike the consulting expert report by Frederick J. Shiple, III, M.D., as an exhibit to plaintiff's complaint, (docket # 84);

(2) **DENIES** defendants' motion to strike plaintiff's response to defendants' motion for partial summary judgment, (docket # 78);

(3) **DENIES** plaintiff's motion for summary judgment, (docket # 71); and,

(4) **GRANTS** defendants' motion for partial summary judgment on the issue of punitive damages (docket # 68).

**SO ORDERED.**

**Enter**: May 19, 2005

    s/James T. Moody          

JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT